THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

C&S WHOLESALE GROCERS, INC.,  :
                                                   :
     Plaintiff                             :
                                                 :   3:22-CV-1331
     v.                              :   (JUDGE MARIANI)
                                                 :
GERRITY'S SUPER MARKET, INC.,  :
                                                 :
     Defendant.                    :

## MEMORANDUM OPINION

### I. INTRODUCTION

This matter concerns a supply agreement between Plaintiff C&S Wholesale Grocers, Inc. ("C&S") and Defendant Gerrity's Super Market, Inc. ("Gerrity's"), a Pennsylvania grocery retailer chain. Each party claims the other materially breached the supply agreement first. Presently before the Court is Plaintiff C&S Wholesale Grocers, Inc. ("C&S")'s "Motion to Compel Discovery from Gerrity's and Wakefern" (Doc. 85). For the reasons that follow, the Motion will be granted in part and denied in part.

### II. BACKGROUND AND PROCEDURAL HISTORY

In December 2014, C&S and Gerrity's entered into a ten-year supply agreement (the "Supply Agreement") whereby C&S would serve as Gerrity's' primary wholesale supplier. (Doc. 1 ¶ 29.) Gerrity's alleges that it developed concerns regarding C&S's supply performance, which it communicated to C&S "on multiple occasions over the course of several years," including on August 30, 2021. (Doc. 30 ¶ 22.) During the summer of 2021,

Gerrity's notified C&S that it was engaging Wakefern Food Corp. ("Wakefern") as a secondary wholesale supplier. (*Id.* ¶¶ 28–30.) For some time thereafter, both Wakefern and C&S served as wholesale suppliers to Gerrity's. (*Id.* ¶ 32.) On June 24, 2022, Gerrity's replaced C&S and engaged Wakefern as its primary supplier. (*Id.* ¶¶ 38–39.)

C&S filed a Complaint against Gerrity's on August 22, 2022. (*See generally* Doc. 1.) C&S asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing, alleging that Gerrity's materially breached the Supply Agreement by replacing C&S before the ten-year term expired. (*Id.*) The Complaint requests declaratory relief, injunctive relief, and damages. (*Id.*) On October 24, 2022, Gerrity's filed a counterclaim against C&S, alleging that C&S materially breached the Supply Agreement by failing to meet its supply obligations before Gerrity's engaged Wakefern. (*See generally* Doc. 30.) Neither party has joined Wakefern, which remains a non-party.

C&S's Motion seeks to compel the production of documents from Gerrity's as well as Wakefern. C&S describes the discovery it seeks as documents and communications regarding:

1. Wakefern's involvement in Gerrity's breach of the Supply Agreement, including negotiations, agreements, and internal or external communications with or about Gerrity's;
2. Gerrity's and Wakefern's disclosure and misuse of the confidential Supply Agreement, and the resulting injury and damages to C&S; and
3. Wakefern's relative supply performance under its agreements with Gerrity's from the date of the breach with C&S to the present.

(Doc. 86 at 2 (citations omitted).) These summaries are somewhat misleading, as they fail to convey the broad nature of the language used in the actual requests directed to Gerrity's and Wakefern. Five requests for production ("RFPs") of documents directed to Gerrity's are at issue, as well as ten topics from the subpoena directed to Wakefern.[1]

---

[1] C&S seeks to compel the production of documents from Gerrity's as requested in the following RFPs:

> REQUEST NO. 2: All Documents and Communications regarding the current or future scope of Your contractual relationship with Plaintiff, including but not limited to, extension of the Supply Agreement.
>
> REQUEST NO. 3: All Documents and Communications with Wakefern regarding Your decision to join the Wakefern Cooperative, including with respect to this Action, (a) any promise to hold harmless, or indemnify You against any claims asserted by Plaintiff in the Action, or to pay Your legal fees or other expenses related to the Action, (b) the provision or recommendation of legal representation in this Action, (c) Your valuation of Plaintiff's claims set forth in the Action, (d) Your defenses to Plaintiff's claims set forth in the Action, and (e) Your counterclaims asserted against Plaintiff in the Action.
>
> REQUEST NO. 4: All Documents and Communications concerning the relationship between You and Wakefern, including without limitation (a) all transactional documents, including any operative agreement, such as a supply or membership agreement, (b) Your performance under the operative agreement(s), (c) Wakefern's performance under the operative agreement(s), (d) Your and Wakefern's respective rights and obligations under the operative agreement(s), (e) Your order and supply history, including an accounting of the wholesale products—and pricing of the wholesale products—that You have purchased from Wakefern, (f) Wakefern's pricing and provision of goods and services to You, including any rebates that You have received from Wakefern, (g) any complaints that You have made to Wakefern regarding its prices or pricing structure, (h) any complaints that You have made to Wakefern regarding its performance under the operative agreement(s) and/or Your membership in the Wakefern Cooperative, and (i) Your decision to replace Plaintiff with Wakefern as Your Primary Supplier.
>
> REQUEST NO. 7: All Documents and Communications regarding the disclosure by You, or anyone acting on Your behalf, of any portion of the Supply Agreement or information concerning the Supply Agreement to any non-party to the Supply Agreement, including but not limited to Wakefern.
>
> REQUEST NO. 8: All Documents and Communications regarding Wakefern providing Merchandise to You: (a) as a Secondary Supplier, and (b) as a Primary Supplier.

(Doc. 87, C&S App. A.) C&S seeks to compel Wakefern's compliance with its subpoena and produce documents responsive to the following subpoena topics:

> REQUEST NO. 1: All Documents and Communications regarding the Supply Agreement, including Your possession and use of the Supply Agreement as well as Defendant's purported termination of the Supply Agreement.
>
> REQUEST NO. 2: All Documents and Communications regarding Defendant becoming a member of Your cooperative.
>
> REQUEST NO. 3: All Documents and Communications regarding Your supply of goods and services to Defendant.
>
> REQUEST NO. 4: All Documents and Communications regarding Defendant transitioning to an exclusive commercial relationship with You.
>
> REQUEST NO. 6: All Documents and Communications concerning the relationship between Plaintiff and Defendant including, without limitation, (a) the Supply Agreement, (b) Plaintiffs performance under the Supply Agreement, (c) Defendant's performance under the Supply Agreement, (d) Plaintiff's and Defendant's respective rights and obligations under the Supply Agreement, including with respect to exclusivity, (c) Plaintiffs and Defendant's order and supply history, and (f) Plaintiffs pricing and provision of goods and services to Defendant.
>
> REQUEST NO. 7: All Documents and Communications concerning the relationship between You and Defendant, including without limitation, (a) all transactional documents, including any operative agreement(s), such as a supply or membership agreement, (b) Your performance under the operative agreement(s), (c) Defendant's performance under the operative agreement(s), (d) Your and Defendant's respective rights and obligations under the operative agreement(s), (e) Defendant's order and supply history, including an accounting of the wholesale products—and pricing of the wholesale products—that Defendant has purchased from You, (f) Your pricing and provision of goods and services to Defendant, including any rebates that You have paid to or promised Defendant, (g) any complaints from Defendant regarding Your prices or pricing structure, (h) any complaints from Defendant regarding Your performance under the operative agreement(s) and/or membership in Your cooperative, and (i) Defendant's decision to end its relationship with Plaintiff.
>
> REQUEST NO. 8: Documents sufficient to show any agreement between You and Defendant regarding this Action, including without limitation indemnity against any claims brought by Plaintiff, hold harmless obligations, legal fees and related costs associated with this Action, and the provision or recommendation of legal representation for Defendant in this Action.
>
> REQUEST NO. 9: All Documents and Communications between You and any third party concerning the relationship between Plaintiff and Defendant, including Communications with

Inexplicably, C&S's Motion does not meaningfully distinguish between the discovery it seeks from Gerrity's, the Defendant, and the discovery it seeks from Wakefern, a non-party, via subpoena. C&S's Motion and brief in support are devoid of any analysis under Federal Rule of Civil Procedure 45. (*See generally* Docs. 85, 86.) Wakefern filed a brief in opposition to C&S's Motion, in which it asks the Court to quash the subpoena, but did not file a separate motion to quash. (*See generally* Doc. 111.) Gerrity's also opposed the Motion. (*See generally* Doc. 110.)

### III. ANALYSIS

The Court first addresses C&S's Motion as it pertains to Gerrity's.

### A. *Motion to Compel*

A party who has received evasive or incomplete discovery responses may seek a court order compelling disclosure or discovery of the materials sought. *See* Fed. R. Civ. P. 37(a). The moving party must demonstrate the relevance of the information sought to a

---

individuals and entities affiliated with ShurSave® Ad Group members regarding Defendant's transition from Plaintiff to You.

REQUEST NO. 10: All Your Communications with any members of the ShurSave Ad Group, including solicitations or offers to be the Primary or Secondary Supplier.

REQUEST NO. 13: All Documents and Communications concerning this Action, including Defendant's valuation of Plaintiff's claims set forth in the Action, Defendant's defenses to Plaintiff's claims set forth in the Action, and Defendant's Answer and Counterclaims asserted against Plaintiff in the Action.

(Doc. 88, C&S App. B.)

particular claim or defense. *See Howard v. LVNV Funding, LLC*, No. 3:19-CV-93, 2020 WL 7130562, at *4 (W.D. Pa. Dec. 4, 2020). The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper. *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982).

Generally, courts afford considerable latitude in discovery to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 349 U.S. 495, 501 (1947). The procedural rule defining the scope and limits of discovery provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "[A]ll relevant material is discoverable unless an applicable evidentiary privilege is asserted. The presumption that such matter is discoverable, however, is defeasible." *Pearson v. Miller*, 211 F.2d 57, 65 (3d Cir. 2000). Furthermore, the court may limit discovery where: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity

to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(c).

Gerrity's opposes C&S's Motion on several grounds. First, Gerrity's generally contends that C&S has not met its threshold burden of demonstrating that the discovery sought is relevant. (Doc. 110 at 16.) Gerrity's specifically contends that subpart (b) of RFP 8 "demand[s] discovery into areas unrelated to the actual issues in dispute." (*Id.* at 22.)[2] Second, Gerrity's contends the Motion is moot as it pertains to RFPs 2 and 7. (*Id.* at 17.) Third, Gerrity's argues generally that the requests are not proportional to the needs of the case, as required by Rule 26(b)(1). (*Id.* at 16.) Specifically, Gerrity's objects to RFP 4, which requests "[a]ll Documents and Communications concerning the relationship between [Gerrity's] and Wakefern," as "grossly overbroad." (*Id.* at 19.) Finally, Gerrity's objects to RFP 3 because it demands privileged documents and communications. (*Id.* at 25.)

### 1. Relevance Generally

As Gerrity's notes, it is C&S's threshold burden to establish the relevance of the material requested. *See Howard*, 2020 WL 7130562, at *4. The Court agrees with Gerrity's that C&S's brief in support of its Motion does not make a strong argument in support of relevance. In fact, C&S's reply brief provides a significantly more substantial relevance argument. Of course, such arguments are not properly introduced in a reply brief. *See*

---

[2] Gerrity's frames this argument as challenging the proportionality of the request, but the Court views it as an argument rooted in the irrelevance of the discovery sought by RFP 8, subpart (b).

7

*Marcum v. Columbia Gas Transmission, LLC*, 549 F. Supp. 3d 408, 420 n.4 (E.D. Pa. 2021) ("Courts need not address arguments raised for the first time in a reply brief.").

Still, considered together with C&S's detailed statement of facts, C&S's brief provides just enough to demonstrate that its requests are generally relevant to the parties' claims and defenses. In deciding as much, the Court is mindful of the Third Circuit's "liberal discovery standard." *Westchester Fire Ins. Co. v. Household Int'l, Inc.*, 167 F. App'x 895, 899 (3d Cir. 2006) (citing *Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999). Considering the facts as alleged, it is apparent that Gerrity's relationship with Wakefern—as it pertains to Wakefern's engagement as Gerrity's wholesale supplier—is relevant to whether the Supply Agreement was breached by either party. Therefore, with one exception noted *infra*, the Court finds that C&S has met its threshold burden of demonstrating relevance.

As a final note, Rule 26 requires that the discovery sought be "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Implied in that language is the requirement that the claim or defense has *been pled*. In other words, "parties . . . have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Fed. R. Civ. P. 26(b)(1), Advisory Committee Notes to 2000 Amendments. Insofar as C&S has demonstrated relevance, that is because the discovery sought is relevant to *existing* claims or defenses.

8

### *2. Relevance of RFP 8, Subpart (b)*

The Court is persuaded, however, that RFP 8, subpart (b) seeks information not relevant to any existing claims or defenses. RFP 8 requests "All Documents and Communications regarding Wakefern providing Merchandise to [Gerrity's]: (a) as a Secondary Supplier, and (b) as a Primary Supplier." (Doc. 87, C&S App. A.) Gerrity's objects to subpart (b) only, on the grounds that "[t]he current 'primary supplier' relationship between Wakefern and Gerrity's post-transition has no relevance to any claim or defense in this case." (Doc. 110 at 22.)

C&S contends that "Gerrity's has pled that C&S un[der]performed as compared to Wakefern, which opens the door to discovery related to Wakefern's performance. . . . As a matter of basic fairness, C&S must be able to defend against comparative claims by testing the veracity of Gerrity's allegations." (Doc. 86 at 11–12 (citing Countercl. ¶¶ 34–37).) If this were an accurate description of Gerrity's counterclaim, subpart (b) might be relevant.

But Gerrity's counterclaim plainly does not put at issue Wakefern's supply performance after June 24, 2022. Paragraphs 34–37 of the counterclaim describe the alleged situation from the summer of 2021 through June 24, 2022, when C&S remained the primary supplier and Wakefern served as a secondary supplier. Under the heading "C&S and Wakefern Coexist as Wholesale Suppliers for Gerrity's," the Counterclaim states,

> 34. Gerrity's found that Wakefern was successful in procuring products more consistently which C&S had failed to procure, and offered support services that C&S either never offered, or had ceased offering.

9

> 35. Gerrity's also found that Wakefern's private label quality and variety was better than that of C&S.
>
> 36. Gerrity's also found that Wakefern offered considerably better wholesale pricing than C&S.
>
> 37. In sum, Gerrity's found that Wakefern offered better procurement, reliable deliveries, superior private label quality, and lower pricing than C&S.

(Doc. 30 ¶¶ 34–37.) Gerrity's ultimately asserts that

> C&S breached the Supply Agreement by (a) failing to procure merchandise which it was contractually obligated to procure, (b) failing to make deliveries and to maintain its contractually-obligated Product and Delivery Service Levels, (c) failing to 'work with [Gerrity's] to remain competitive in the marketplace' as required by the Supply Agreement, and (d) failing to cure these breaches upon receiving notice of these breaches.

(*Id.* ¶ 64.) Nowhere does Gerrity's compare Wakefern's post-June 24, 2022 performance to C&S's pre-June 24, 2022 performance.

To the extent Gerrity's "has pled that C&S un[der]performed as compared to Wakefern" (Doc. 86 at 11), that comparison was temporally limited to the period when Wakefern and C&S coexisted as suppliers. Given that Wakefern's performance as a primary supplier cannot have affected Gerrity's earlier decision to switch from C&S to Wakefern, C&S has not shown how that performance is relevant.

In C&S's reply brief, it adds a second argument in support of relevance:

> This discovery is also relevant to Gerrity's claim that C&S's performance allegedly caused Gerrity's "millions of dollars of damages," including lost profits and costs required to "remediate reputational injuries." Countercl. at ¶ 65. C&S is entitled to test Gerrity's lost profit claim against its profits now that it is working with Wakefern as its primary supplier. Allowing Gerrity's to shield this discovery

10

> will unfairly prejudice C&S's ability to defend itself against Gerrity's counterclaims.

(Doc. 115 at 13–14.) This argument is unconvincing. Gerrity's is required, in making its initial disclosures under Rule 26, to provide

> a computation of each category of damages claimed by the disclosing party-- who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1)(A)(iii). Thus, Rule 26 expressly entitles C&S to discovery regarding Gerrity's' calculation of damages. If Gerrity's calculates its damages based on Wakefern's performance as a primary supplier, C&S is entitled to those calculations and underlying materials. If not, C&S is not entitled to that discovery, but it will not be "unfairly prejudice[d]" as a result.

Accordingly, C&S has failed to demonstrate the relevance of Wakefern's performance as a primary supplier, and its Motion will be denied with respect to RFP 8, subpart (b).

### 3. "Mootness" of RFPs 2 and 7

Next, C&S's Motion will be granted with respect to RFPs 2 and 7. Gerrity's argues the Motion is "moot" as to these RFPs because "Gerrity's is complying with these requests" and "[n]o disagreement has yet arisen with respect to these RFPs." (Doc. 110 at 1.) Of course, Gerrity's is under a continuing duty to supplement its productions, so the Motion is

hardly moot even if Gerrity's has begun producing documents. *See* Fed. R. Civ. P. 26(e)(1). In any event, Gerrity's makes clear it "will make a good faith effort to interpret this Request and collect" and produce documents responsive to RFPs 2 and 7. (Doc. 110 at 18.) Seeing no dispute with respect to this discovery, C&S's Motion will be granted as it pertains to RFPs 2 and 7.

### 4. Proportionality of RFP 4

With respect to RFP 4, the Court agrees with Gerrity's that it is "grossly overbroad" and not proportional to the needs of the case. (Doc. 110 at 19.) RFP 4 seeks—"without limitation"—"All Documents and Communications concerning the relationship between [Gerrity's] and Wakefern." (Doc. 87, App. A.) C&S lists nine categories encompassed within this request but does not limit the request to those categories. (*Id.*) Further, the request covers an unlimited period of time. (*Id.*) In effect, then, the only limiting factor on this request is that a document or communication "concern[] the relationship between [Gerrity's] and Wakefern."

Considering the ongoing business relationship between Gerrity's and Wakefern, this request is unquestionably overinclusive. Presumably, while many relevant documents would fit the terms of such a request, so too would thousands of irrelevant documents. Notably, the RFP is not overinclusive solely for lack of a time frame; it must also be narrowed by subject matter. In other words, the request for all documents concerning the Gerrity's/Wakefern relationship, "without limitation," would be overbroad even if it were

temporally limited. As a starting point, RFP 4's ninth non-exhaustive category would seem to capture many of the relevant materials in this matter: documents and communications concerning the "relationship between [Gerrity's] and Wakefern" and "Defendant's decision to end its relationship with Plaintiff." (Doc. 87, App. A.)

Accordingly, the Court will sustain Gerrity's objections to RFP 4. Not only would this request demand the production of irrelevant documents, but it would impose a burden on Gerrity's likely to outweigh its benefit under Rule 26. The Court will deny the Motion as it pertains to this RFP, without prejudice to C&S seeking a narrower response that more precisely explains the relevance of the materials sought, and which narrows the scope of the request to a specific time frame. *See Schiavone v. Luzerne Cnty.*, 343 F.R.D. 34, 41 (M.D. Pa. 2023) ("Even if discovery is proportional to the needs of the case, courts have the discretion to impose limits where the discovery sought is unreasonably cumulative or duplicative, or where the burden or expense of the proposed discovery outweighs its likely benefit." (quoting *Occidental Chem. Corp. v. 21st Century Fox Am., Inc.*, No. 18-11273, 2020 WL 1969898, at *6 (D.N.J. Apr. 24, 2020))).

### 5. RFP 3 and Common Interest Privilege

Finally, the Court addresses Gerrity's objections to RFP 3. Gerrity's argues that RFP 3 explicitly demands attorney-client privileged documents and communications. (Doc. 110 at 25.) RFP 3 requests

> [a]ll Documents and Communications with Wakefern regarding [Gerrity's'] decision to join the Wakefern Cooperative, including with respect to this Action,

13

> (a) any promise to hold harmless, or indemnify [Gerrity's] against any claims asserted by Plaintiff in the Action, or to pay [Gerrity's'] legal fees or other expenses related to the Action, (b) the provision or recommendation of legal representation in this Action, (c) [Gerrity's'] valuation of Plaintiff's claims set forth in the Action, (d) [Gerrity's'] defenses to Plaintiff's claims set forth in the Action, and (e) [Gerrity's'] counterclaims asserted against Plaintiff in the Action.

(Doc. 87, App. A.) Indeed, this request describes types of communications that would be privileged, and not discoverable, in many circumstances. And it may be the case that Gerrity's will properly assert claims of privilege with respect to many documents and communications responsive to this RFP, whether pursuant to attorney work product privilege, traditional attorney-client privilege, or the common interest privilege. The dispute here concerns the scope of the common interest or joint defense privilege, and specifically, if and when a common interest arose.

At the outset, the governing privilege law in this diversity case is that of the state in which this Court sits: Pennsylvania. *See Audi of Am., Inc. v. Bronsberg & Hughes Pontiac, Inc.*, 255 F. Supp. 3d 561, 568 (M.D. Pa. 2017) (collecting cases). Finding limited guidance from Pennsylvania's own courts, the Court supplements its analysis by looking to the application of the privilege in the Third Circuit. *See id.*

The common interest doctrine, or joint defense privilege, serves as an exception to the general rule that attorney-client and attorney work product privileges are waived when the otherwise privileged materials are disclosed to a third party. *See Pennsylvania Pub. Util. Comm'n v. Sunrise Energy, LLC*, 177 A.3d 438, 445–46 (Pa. Commw. Ct. 2018); *see also Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 284 (W.D. Pa. 2014) (noting

14

Pennsylvania law remains "unsettled" but concluding that the common interest doctrine applies to attorney work product).  As the court in *Audi of America, Inc.* explained,

> [t]he common-interest privilege "allows attorneys representing different clients with similar interests to share information without having to disclose it to others." *In re Teleglobe Communications Corp.*, 493 F.3d 345, 364 (3d Cir. 2007). The purpose of the privilege is to protect communications shared between different individuals or entities and their legal counsel where the communications are "'part of an on-going and joint effort to set up a common defense strategy.'" *In the Matter of Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3d Cir. 1986) (quoting *Eisenberg v. Gagnon*, 766 F.2d 770, 787 (3d Cir. 1985)).

255 F. Supp. 3d at 570.  To invoke the common interest doctrine, the party invoking the privilege must show

> (1) the parties' agreement to same; (2) a common-interest in the litigation or a jointly shared litigation strategy; (3) the communications were made pursuant to such agreement, and (4) the continued confidentiality of the communications, i.e., the communications were not disclosed to other third parties such that the privileges were waived.

*Pennsylvania Pub. Util. Comm'n*, 177 A.3d at 445 (quoting *Rosser Int'l, Inc. v. Walter P. Moore & Assocs., Inc.*, No. 2:11-CV-1028, 2013 WL 3989437, at *19 (W.D. Pa. Aug. 2, 2013)).  Moreover, the parties must share a common *legal* interest.  "[A] shared common business interest or an interest that is solely commercial is insufficient to warrant application of the privilege."  *Id.* (quoting *In re Condemnation by City of Philadelphia in 16.2626 Acre Area*, 981 A.2d 391, 397–98 (Pa. Cmwlth. 2009)).

    Gerrity's argues that C&S's Motion should be denied with respect to RFP 3 because the communications it demands "would be covered by the joint defense privilege between

15

Wakefern and Gerrity's." (Doc. 110 at 25.) As a threshold matter, Wakefern and Gerrity's clearly agreed to establish a joint defense strategy; it is undisputed that a Joint Defense Agreement was executed between Wakefern and Gerrity's, at some point after May 26, 2022.[3] (See Doc. 95.) But C&S contends that Wakefern and Gerrity's shared only an "economic interest," at least until June 24, 2022, because they could not have aligned their legal interests until Gerrity's joined Wakefern. (Doc. 86 at 13.) Without a common legal interest, it would follow that the common interest privilege could not be invoked with respect to documents and communications from before that date.

Gerrity's contends the privilege attached earlier. It points to correspondence from C&S's counsel as early as June 1, 2022, which Gerrity's describes as "indicating that [C&S] was aware of Gerrity's discussions with Wakefern about transitioning suppliers and threaten[ing] litigation on that basis." (Doc. 110 at 25.) Notably, Gerrity's does not cite the June 1 correspondence nor attach it as an exhibit.

Neither argument is persuasive. Lacking any support in the record, the Court cannot rely on Gerrity's reference to June 1 correspondence. On the other hand, C&S's contention that a shared legal interest cannot have predated Gerrity's formal decision to join Wakefern is unrealistic. In the Court's view, the parties established a common legal interest on June 13, 2022, when C&S's counsel sent Wakefern a letter demanding that it "immediately cease

---

[3] Gerrity's asserts, without support, that the Joint Defense Agreement was signed on June 21, 2022. (Doc. 110 at 25.) The document itself is undated but was created on May 26, 2022, according to Gerrity's' privilege log. (See Ex. G-1.)

16

and desist from improperly and unlawfully interfering with C&S's contractual relations with [Gerrity's]." (Doc. 110-13, Ex. 12.) Before that, the possibility of a shared legal interest "was too remote, contingent and uncertain to allow for invocation of the common interest doctrine." *Fraunhofer-Gesellschaft zur Forderung der Angewandten Forschung E.V. v. Sirius XM Radio Inc.*, No. 1:17CV184, 2022 WL 4079051, at *1 (D. Del. Sept. 2, 2022). Other courts have held that correspondence directly challenging a potential transaction between two parties gave rise to a common legal interest between those parties, even while the terms of the challenged deal were still being negotiated. *See, e.g., Audi of Am., Inc.*, 255 F. Supp. 3d at 571.

For that reason, assuming the elements of the applicable privilege (attorney-client or work product) are otherwise established, Wakefern and Gerrity's may assert a common interest privilege with respect to documents and communications shared between their counsel after June 13, 2022, but not before. Documents and communications made before that date may still be protected by traditional privileges.

The Court notes that, in Pennsylvania, "separate counsel for different clients is required" to invoke the common interest privilege. *CAMICO Mut. Ins. Co. v. Heffler, Radetich & Saitta, LLP*, No. CIV.A. 11-4753, 2013 WL 315716, at *2 (E.D. Pa. Jan. 28, 2013) (citing *In re Condemnation,* 981 A.2d at 397–98). The parties' submissions do not state when Gerrity's and Wakefern came to retain the same counsel, so the Court declines to decide whether this rule affects Gerrity's' claim of privilege.

With the foregoing analysis in mind, to the extent RFP 3 demands the production of non-privileged documents, C&S's Motion will be granted.

### B. Enforcement of Wakefern Subpoena

Insofar as C&S's Motion also seeks to compel Wakefern's compliance with its subpoena, the Motion will be denied. The Motion improperly conflates two legally distinct requests: on the one hand, production of discovery by a party to the case, and on the other, production by a third party pursuant to a subpoena. Despite C&S's suggestions to the contrary, the fact that Wakefern is a "closely related non-party at the center of the alleged wrongdoing" (Doc. 115 at 6 n.2) is of no consequence. Wakefern remains a non-party, and if C&S seeks to compel discovery from Wakefern, it must conform with the requirements of Rule 45.

For example, among other requirements, Rule 45 provides the procedure for moving to compel production pursuant to a subpoena to which the recipient of the subpoena has objected. The Rule is clear that such motion shall be made in "the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i). The place of compliance is "within 100 miles of where the person resides, is employed, or regularly transacts business in person." *Id.* 45(c)(2)(A). C&S's Motion and brief fail to provide any information regarding where Wakefern transacts business, nor where compliance is required, so the Court is unable to determine whether the subpoena is properly enforced in this district.

In short, C&S's Motion treats its Wakefern request as identical to its Gerrity's request and does not provide the Court with sufficient information to conclude that Rule 45 has been satisfied. C&S's brief in support of its Motion does not even cite the Wakefern subpoena. The Court will not sift through the already voluminous record to locate the necessary factual support for C&S's Motion. As such, the Motion will be denied without prejudice as it pertains to the Wakefern subpoena.

If C&S chooses to file a second Motion with respect to the Wakefern subpoena, C&S is advised that the Court will only consider the relevance of its requests in light of the *current* claims and defenses. C&S's contention that certain "evidence is critical to determine whether the complaint needs to be amended and/or if Wakefern needs to be joined as an additional party" carries no weight under Rule 26. *See* Fed. R. Civ. P. 26(b)(1), Advisory Committee Notes to 2000 Amendments.

## IV. CONCLUSION

For the foregoing reasons, C&S's Motion (Doc. 85) will be denied in part and granted in part. Concerning the discovery requested from Gerrity's, the Motion will be granted with respect to RFPs 2, 3, 7, and 8 subpart (a). The Motion will be denied with respect to RFPs 4 and 8 subpart (b). Concerning the Wakefern subpoena, the Motion will be denied. A separate Order follows.

Robert D. Mariani
United States District Judge